

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**Signed September 3, 2009**                                       **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| IN RE: | § | |
| | § | |
| MILTON M. SMITH, | § | Case No. 09-30531-HDH-7 |
| | § | |
| Alleged Debtor. | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION ON INVOLUNTARY PETITION

On January 30, 2009, Rhodes Properties filed a Chapter 7 Involuntary Petition against Milton M. Smith, the Alleged Debtor, pursuant to 11 U.S.C. § 303. Mr. Smith contested the relief sought by Rhodes Properties, Ltd. ("Rhodes"), and moved for dismissal. Rhodes and the Debtor then agreed on a discovery and briefing period and the Court held a trial on the Involuntary Petition on July 13th and 23rd with post trial briefs submitted on July 30, 2009. After consideration of the evidence presented at trail, the Court finds that the motion to dismiss the Involuntary Petition should be denied, and an order for relief should be entered against Mr. Smith.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334 and the standing order of reference in this district. The proceedings with respect to an Involuntary Petition are core pursuant to 28 U.S.C. § 157(b).

## I.     Issues Involving Grounds For Dismissal

Mr. Smith asks that the Involuntary Petition be dismissed on four grounds:

1.   The state court judgment obtained by Rhodes Properties is on appeal, and therefore subject to bona fide dispute, making Rhodes ineligible to file the Involuntary Petition;

2.   Mr. Smith denies that he has fewer than twelve creditors, and therefore 11 U.S.C. § 303(b)(1) requires that the Involuntary Petition be signed by three or more creditors;

3.   The Court lacks jurisdiction over this matter; and

4.   This is a two party dispute, Rhodes Properties has an adequate remedy at law in the Texas state courts and therefore the Involuntary Petition should be dismissed on equitable abstention grounds.

## II.    Background Facts

On April 20, 2001, BABS Holding Co. ("BABS") agreed to purchase certain assets owned by Rhodes for $18,000,000.00, with $14,000,000.00 of the purchase price paid in cash at closing and $4,000,000.00 to be paid pursuant to a promissory note. The transaction closed on May 21, 2001. Rhodes asserts that as part of the May 21, 2001 sale, Mr. Smith, who was the majority owner of BABS and its president, executed a guaranty.

Rhodes sued Mr. Smith on the guaranty after BABS defaulted on the note in a petition against Mr. Smith in the 160th Judicial District Court, Dallas County, Texas on April 20, 2007.  The state court granted summary judgment on the guaranty claim against Mr. Smith on December 10, 2007, and amended that order on January 5, 2008.

Mr. Smith filed a motion for reconsideration, which was denied on March 4, 2008, and later filed an appeal to the Dallas Fifth District Court of Appeals.  On March 27, 2008, the state court signed an order severing the claims and counterclaims between the Rhodes and Mr. Smith.  On March 24, 2008, three days prior to the severance order, Mr. Smith formed the Milton M. Smith Irrevocable Trust in the Cook Islands (the "Cook Islands Trust") into which he assigned the bulk of his assets.

Thereafter, on July 22, 2008, Mr. Smith filed an affidavit with the state court stating that he had a negative net worth and depositing the sum of $1.00 into the court's registry for the purpose of suspending enforcement of the judgment while on appeal.  On August 5, 2008, the state trial court entered a post-judgment injunction which enjoined the Debtor from dissipating or transferring assets outside the normal course of business without prior court approval.  On January 29, 2009, Mr. Smith withdrew the $1.00 deposit and attempted to have the state court injunction dissolved.  Rhodes filed the Involuntary Petition the following day.

## III. Analysis

Pursuant to section 303 of the Bankruptcy Code, an involuntary case may be filed against a person by the filing with the bankruptcy court of a petition under Chapter 7 or 11—

> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. . . [that] aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724 (a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 of such claims;

11 U.S.C. § 303(b). If the involuntary petition is contested, then the court must enter relief against a debtor under the chapter under which the petition was filed if "the debtor is generally not paying his debts as they come due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h).

Mr. Smith filed a list under Federal Rule of bankruptcy Procedure 1003(b) naming 12 or more creditors, therefore Rhodes has the burden of showing that Smith actually has less than 12 creditors under § 303(b). Rhodes must satisfy the requirements of 11 U.S.C. § 303 by a preponderance of the evidence. *In re Moss*, 249 B.R. 411, 418 (Bankr. N.D. Tex. 2000) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**A.     Bona Fide Dispute**

The Bankruptcy Code does not define "bona fide dispute." The Fifth Circuit has

held that a debt is the subject of a bona fide dispute when "there is an objective basis for

either a factual or legal dispute as to the validity of the debt." In re Sims, 994 F.2d 210,

220 (5th Cir. 1993), *cert. denied sub nom. Sims v. Subway Equipment Leasing Corp.*, 510

U.S. 1049 (1994). "Because the standard is objective, neither the debtor's subjective

intent nor his subjective belief is sufficient to meet this burden." *Id*. at 221.

Rhodes' claim consists of a final judgment from the state court against Mr. Smith

that has not been stayed on appeal. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6

(Tex. 1986) (holding that a judgment is final for the purposes of res judicata and

collateral estoppel despite the taking of an appeal, unless the appeal consists of a trial de

novo). Mr. Smith argues that the state court judgment was taken in error and will be

reversed by the Dallas court of appeals, making it subject to bona fide dispute.

The majority of decisions analyzing this issue have found that final judgments

from state courts that have not been stayed on appeal are not subject to bona fide dispute.

*In re AMC Investors, LLC*, 406 B.R. 478, 484 (Bankr. D. Del. 2009) (citing *In re Norris*,

1997 WL 256808, at *5 (5th Cir. 1997) (per curiam), *In re Euro-American Lodging*

*Corp.*, 357 B.R. 700, 712; *In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005); *In re*

*Raymark Indus.*, 99 B.R. 298, 300 (Bankr. E.D. Pa.1989)); *see also In re* Everett, 178

B.R. 132, 140 (Bankr. N.D. Ohio 1994) (unappealed, unstayed final judgments not

subject to bona fide dispute); *In re Smith*, 123 B.R. 423, 425 (Bankr. M.D. Fla.1990)

(claim based on judgment not subject of bona fide dispute), *aff'd*, 129 B.R. 262

(M.D.Fla.1991); *In re Drexler*, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986).

In an unpublished decision, the Fifth Circuit has held that final judgment that has not been stayed is not subject to a bona fide dispute for the purposes of section 303(b)(1) and 303(h)(1). *In re Norris*, 1997 WL 256808, 114 F.3d 1182 (5th Cir. 1997), *cert. denied*, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266.  Citing the objective test in *Sims*, the Fifth Circuit said that "[t]o hold otherwise would require the bankruptcy court to review the state court judgment in order to predict [the alleged debtor's] chance of success on appeal (which would be particularly troubling in that a state court judgment is at issue), and would undermine the objective standard adopted in *Sims*." *Id*.

Mr. Smith asserts that there is no per se rule that a final unstayed judgment cannot be subject to bona fide dispute, citing a Fourth Circuit decision, and saying that the bankruptcy court must therefore determine the likelihood of Mr. Smith's success on appeal.  *See In re Byrd*, 357 F.3d 433 (4th Cir. 2004) (court making determination of bona fide dispute of a state court judgment on appeal is required to conduct a derivative inquiry into the likelihood of success on appeal); *see also In re Graber*, 319 B.R. 374, 379 (Bankr. E.D. Pa. 2004).  However, as discussed by the Delaware bankruptcy court in the recent *AMC Investors* decision, "This approach is unnecessarily intrusive into the trial court's ruling and undermines the objective analysis of bona fide disputes. In effect, *Byrd* turns the court into an odds maker on appellate decision-making."  *In re AMC Investors, LLC*, 406 B.R. at 485 (citing *Norris*, 1997 WL 256808, at *5).  The court in *AMC* Investors decision discusses the difficulty of the Fourth Circuit's approach:

> The inherent difficulty and lack of necessity in engaging in such analysis is borne out by *Byrd* itself, as the court only made a cursory examination into the pending appeals, finding the alleged debtor presented no evidence to support his likelihood of success on appeal and, thus, "failed to raise any substantial factual or legal questions about the continued viability of those judgments."  The same analysis would have been reached simply by

respecting the trial court's determination of this matter on the merits and the absence of a stay pending appeal. . . . *Byrd* renders the entry of a judgment as completely irrelevant in determining the existence of a claim. This cannot be the correct reading of the statute. As the court in *Drexler* correctly noted, "[o]nce entered, an unstayed final judgment may be enforced in accordance with its terms and with applicable law or rules, even though an appeal is pending." The holder of an unstayed final judgment may utilize an array of state court enforcement procedures, including the filing of a judgment lien, as Eugenia did in this case. To hold that an unstayed final judgment is enforceable in state courts and voluntary proceedings in federal bankruptcy court, but not for involuntary cases would "effect a radical alteration of . . .the long-standing enforceability of unstayed final judgments." *Drexler*, 56 B.R. at 967.

*Id* at 485-86 (internal citations omitted).

After reviewing this line of decisions, this Court finds the analysis in *AMC Investors* persuasive and in line with the Fifth Circuit's unpublished decision in *Norris*, which follows the *Drexler* line of decisions. Further, under the Fourth Circuit's own analysis, state court "judgments go a long way toward establishing the absence of a bona fide dispute," and "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments." *In re Byrd*, 357 F.3d 433, 438 (4th Cir. 2004). Based on the facts as presented at trial, the Court will not look behind the state court judgment and finds that it is not the subject of a bona fide dispute as to liability or amount.

## B. Not Paying Debts As They Come Due

Section 303(h) "requires that the court consider both the amount of the debt not being paid and the number of creditors not being paid." *In re Harman*, 243 B.R. 671, 675 (Bankr. N.D. Tex. 1999) (citing *In re All Media Properties, Inc.*, 5 B.R. 126, 142 (Bankr. S.D. Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981). Thus, the alleged debtor may not be "generally" paying his debts as they come due when he is not paying one hundred percent

of his debts to only one creditor, or paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts. *See e.g.*, *In re Concrete Pumping Serv. Inc.*, 943 F.2d 627 (6th Cir. 1991); *In re Moss*, 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000); *In re Fischer*, 202 B.R. 341, 351 (E.D.N.Y. 1996).

Stated another way by another judge of this Court in *Moss*, the court must look to four factors: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in her financial affairs." *In re Moss*, 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000) (Houser, J.) (citing *In re Norris*, 183 B.R. 437, 456-57 (Bankr. W.D. La.1995). When considering the number and amount of unpaid claims, the Court should include creditors who are not currently pressing the alleged debtor for payment, if their debts have become due. *In re All Media Properties, Inc.*, 5 B.R. 126, 145 (Bankr. S.D. Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981).

The facts as presented at trial show that even though Mr. Smith is paying, including post petition, his small recurring debts as they come due, he is not paying ninety-nine percent of his debts in aggregate amount. Further, that failure to pay is due in great part to his own decision to place the majority of his assets into a trust in the Cook Islands. The Court finds that Rhodes has carried its burden to establish that Mr. Smith is not generally paying his debts as they come due.

### C. Number of Creditors

In his answer to the Involuntary Petition, Mr. Smith contends that even if Rhodes can show that its claim is not subject to bona fide dispute and that he is generally not paying his debts as they come due, he has twelve or more creditors; and therefore, three or more of them are required to file or join an involuntary petition against him. *See* 11 U.S.C. § 303(b)(1). As stated in *Moss*, "the policy considerations for these requirements are twofold: (1) 'the fear that involuntary bankruptcy might be used by one or two recalcitrant creditors as a means of harassing an honest debtor' and (2) 'the possibility that the threat of an involuntary petition would be used to compel the debtor to make preferential payments to one or more litigious creditors.' *In re Moss*, 249 B.R. 411, 419 (Bankr. N.D. Tex. 2000) (quoting *In re Sims*, 994 F.2d 210, 217 (5th Cir. 1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 669 (1994).

Federal Rule of Bankruptcy Procedure 1003 states in pertinent part, "If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof." FED. R. BANKR. P. 1003(b). In his answer filed on February 24, 2009, Mr. Smith listed sixteen creditors. He later amended his list of creditors on March 2, 2009, listing twenty-seven creditors, including Rhodes as a disputed creditor. On June 23, 2009, in his Pretrial Brief, Mr. Smith narrowed this list to twenty-four creditors, by removing his auto and fire and casualty insurance, as well as his satellite television service because they were all prepaid as of the petition date. Finally, at the end of the trial of the involuntary petition, he submitted a "Creditor Summary" which is a demonstrative list of creditors that he

asserted in closing argument that he had either stated previously in his creditor statement, or proved through evidence submitted at trial. This Creditor Summary lists thirty creditors, but is essentially the list provided in his Pretrial Brief with the addition of six creditors that he admits were not owed money on the petition date, but listed to show that he was paying his debts as they came due. Therefore, the Court will address the creditors as listed in Mr. Smith's Pretrial Brief.

*Undisputed Creditors*

Four of the creditors listed by Mr. Smith are not disputed by Rhodes—David Goodhart, Esq. and Frank McNally, CPA, who are owed $1,800.00 and $1,050.00 respectively for prepetition professional fees, the Internal Revenue Service, which is owed an estimated $3,500.00 and Rhodes, which has an estimated $4.5 million judgment.

*Small Recurring Creditors*

In determining the number of creditors, small recurring creditors are not to be included. *See In re Moss*, 249 B.R. 411, 419 (Bankr. N.D. Tex. 2000); *see also*, *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (5th Cir.1971). The Court will apply this rule to exclude: the Dillards Elite Credit Card, owed $67.70, Sam's Club, owed $43.00, AT&T, owed $125.99, and AT&T Mobile, owed $187.39, as well as TXU Electric, Atmos Energy and the City of Dallas-Water Services which had been paid current to the Petition Date, but later billed Mr. Smith for services both before and after the Petition Date.

Section 303(b)(2) also excludes employee claims, insider claims and claims of any transferee of any voidable transfers from the creditor count when determining the

number of creditors necessary to file an Involuntary Petition. 11 U.S.C. § 303(b)(2). There are no employee claims, so the Court will address insiders and transferees in order.

*Insiders*

An insider is an entity or person with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 210 (5th Cir. 1983) (citing legislative history). "Thus, the term 'insider' is viewed to encompass two classes: (1) per se insiders as listed in the Code and (2) extra-statutory insiders that do not deal at arms length. The definition of [an] insider 'must be flexibly applied on a case-by-case basis.'" *In re Premiere Network Services, Inc.*, 333 B.R. 126, 128 -129 (Bankr. N.D. Tex. 2005) (quoting *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d at 210). Cases which have considered whether insider status exists generally have focused on two factors in making that determination: (1) the closeness of the relationship; and (2) whether the transactions were conducted at arm's length. *See In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992).

Based on the evidence presented at trial, the Court finds that due to their relationship with Mr. Smith and the facts surrounding their loans to him, Mr. Kincaid and Mr. Ebbo should be considered insiders and should be excluded from the count of creditors necessary to file an involuntary petition. They are social friends and have known each other for almost thirty years. The purported loans were made to Mr. Smith without common loan documents, at no interest, without security and without a definite time to repay them. These were not arms-length transactions and were entered into with

close personal friends of the debtor, who are relying on Mr. Smith to pay them when is able, and not pursuant to any normal terms or loan agreement.

Rhodes has also objected to the law firms of Korn, Bowdich and Diaz, and Cowles & Thompson, saying that they are insiders who should not be counted. While as a general rule "attorneys are not automatically considered to be insiders under the Code," *In re Lemanski*, 56 B.R. 981, 983 (Bankr. W.D. Wis. 1986), these firms who are currently representing Mr. Smith in this involuntary bankruptcy proceeding, are considered insiders and should therefore be excluded from the count of creditors. *See In re Rimell*, 111 B.R. 250 (Bankr. E.D. Mo. 1990), *aff'd* 946 F.2d 1363 (8th Cir. 1991); (the term "insider" includes an attorney who is currently defending the client in an involuntary bankruptcy petition).

Finally, by definition, the term "insider" includes a relative of the debtor, if the debtor is an individual. *See* 11 U.S.C. § 101(31). Thus, David Smith, who is Mr. Smith's son, should not be counted.

### *Voidable Transfers*

Rhodes argues that certain creditors Mr. Smith listed should be excluded from the count because they received voidable post-petition transfers in violation of § 549(a). This Section states that:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
>> (1) that occurs after the commencement of the case; and
>> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).  The essence of this language is that a debtor may not, after the filing

of the involuntary petition, pay pre-petition debts with money that was earned pre-

petition, and is thus property of the estate pursuant to § 541.  *In re Rimell*, 111 B.R. 250,

255 (Bankr. E.D. Mo. 1990), *aff'd*  946 F.2d 1363 (8th Cir. 1991).  "Section 549(b)

provides a narrow exception for transfers after the filing of an involuntary petition, but

clearly indicates that there is no exception for transfers in exchange for satisfaction of a

prepetition debt."  *In re Atwood*, 124 B.R. 402, 406 (S.D. Ga. 1991).

  The Court must first determine whether or not the transfers in question were made

from property of the estate.  Mr. Smith argues that the transfers were paid from his wife's

checking account, because since April of 2008, when the state court injunction was put in

place, she has been paying all of their expenses out of this account.  According to Mr.

Smith, the source of these funds in this checking account included Helen Smith's

monthly income, which includes separate property, and distributions from the Cook

Islands Trust.  Her monthly income consists of paycheck deposits from her work and a

monthly payment from securities, which she asserts are her separate property.

  According to a pretrial stipulation between Rhodes and Smith [Docket #38], the

following transfers were made from the Milton M. Smith Irrevocable Trust in the Cook

Islands, into Helen Smith's PMA Prime Checking Account with Wells Fargo Bank, N.A.,

Texas, Account # xxxxxx5447 (the "Wells Fargo Account") in the amounts and credited

on the dates set out as follows:

  a. $4,975.00 on August 19, 2008.

  b. $4,975.00 on September 18, 2008.

  c. $4,975.00 on December 1, 2008.

d. $9,975.00 on January 8, 2009.

e. $6,975.00 on February 12, 2009.

f. $19,975.00 on March 5, 2009.

Some of the creditors were paid directly by transfers from the Cook Islands Trust and others were paid out of Ms. Smith's Wells Fargo Account which was partially funded by transfers from the Cook Islands Trust.  Mr. Smith argues that the funds used to make these payments from the Cook Islands Trust were not property of the estate, because he does not own the Trust.  Rather, he is the beneficiary of the Trust and he requested that the Trust make disbursements to his wife's account so that living expenses and creditors could be timely paid.

The evidence presented at trial shows that Mr. Smith is both the settlor and a beneficiary of the Cook Islands Trust.  Generally, an interest of the debtor in property becomes property of the estate notwithstanding a provision that restricts or conditions transfer of such interest by the debtor, which would include the Debtor's beneficial interest in a trust. 11 U.S.C. § 541(c)(1).

An exception to this general rule is provided where a spendthrift provision that is valid under applicable nonbankruptcy law restricts the transfer of a beneficial interest of the debtor.  11 U.S.C. § 541(c)(2); *Shurley v. Texas Commerce Bank-Austin, N.A. (In re Shurley)*, 115 F.3d 333, 336-37 (5th Cir. 1997).  Under Texas law; however, a spendthrift provision in a trust does not protect trust property from the beneficiary's creditors when "the settlor is also a beneficiary of the trust."  *In re Bradley*, 501 F.3d 421, 428 (5th Cir. 2007).  This rule is known as the "self-settlor rule."   "The rationale behind the rule is obvious: 'a debtor should not be able to escape claims of his creditors by himself setting

up a spendthrift trust and naming himself as beneficiary.'" *Id*. (*quoting Shurley*, 115 F.3d at 337). This rule been adopted in nearly every jurisdiction. *See In re Brooks*, 217 B.R. 98, 103 (Bankr. D. Conn. 1998).

Bankruptcy courts are also courts of equity, where the definition of property of the estate is to be interpreted broadly and substance often trumps form. *See In re Burgess*, 438 F.3d 493, 510 (5th Cir. 2006) ("The Supreme Court has routinely concluded that, to fulfill the purposes of bankruptcy law, the definition of property of the debtor's estate must be broadly interpreted."); *see also In re Zedda*, 103 F.3d 1195, 1203-04 (5th Cir. 1997) (substance trumps form to achieve the equitable purpose of bankruptcy); *Brockington v. Scott*, 381 F.2d 792, 794 (4th Cir. 1967) (same); *Cf. In re Lawrence*, 251 BR 630, 640 (SD Fla. 2000), *aff'd*, 279 F3d 1294 (11th Cir. 2002) (recognizing a court's duty to exercise common sense); *In re Portnoy*, 201 BR 685, 700-701 (Bankr. S.D.N.Y. 1996) (refusing to permit Jersey Island law to defease debtor of assets held in a Jersey Island trust); *FTC v. Affordable Media, LLC*, 179 F3d 1228, 1231 (9th Cir. 1999) (affirming district court's rejection of argument that Cook Islands trust law divested ownership interest, noting that "a district court judge and his common sense" are not "easily parted"). With these considerations in mind, the Court finds that the funds from the Cook Islands Trust were property of the estate.

To the extent that Mr. Smith argues that the funds paid from the Wells Fargo Account were Ms. Smith's separate property, and not property of the estate, he has not met his burden. First, as discussed above, the funds from the Cook Islands Trust contained in the account are property of the estate. Second, funds Ms. Smith received from her pay for work during marriage are community, and therefore property of the

estate. *See In re Kim*, 405 B.R. 179, 188 (Bankr. N.D. Tex. 2009) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."); *see also* TEX. FAM. CODE ANN. § 3.002 (Vernon 2006). Finally, payments from securities that she owns as separate property that have been comingled with community property in the Wells Fargo Account have not been sufficiently traced to the post-petition payments to Mr. Smith's creditors.

"When separate and community funds are commingled in a manner defying segregation, it is presumed that the entire fund consists of community property." *Hill v. Hill*, 971 S.W.2d 153, 158 (Tex.App.—Amarillo 1998, no pet.) (citing *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987); *Sibley v. Sibley*, 286 S.W.2d 657, 659 (Tex.Civ.App.—Dallas 1955, writ dism'd w.o.j.). Also, property possessed by either spouse during their marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (Vernon 2006). To overcome the statutory presumption, a spouse claiming assets as separate property is required to establish their separate character by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (Vernon 2006). This presumption may be overcome by tracing and identifying the separate property. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1975). When a tracing analysis is performed, it is presumed that separate funds in a commingled account sink to the bottom of the account and that community funds are paid out first. *See Hill v. Hill*, 971 S.W.2d 153, 158 (Tex.App.—Amarillo 1998, no pet.).

Mr. Smith did not meet his burden to trace the funds to Ms. Smith's separate property. To the extent that payments were made to pre-petition creditors, they were presumed to be from community funds or from property of the estate. Mr. Smith has not

overcome this presumption.  Therefore, the following creditors were the recipients of voidable transfers, and should not be counted: Citi World MasterCard, Dillards Elite Credit Card, Sam's Club, Mark Goldstein, AT&T, AT&T Mobile, TXU Electric, Atmos Energy and the City of Dallas-Water Services.  Korn, Bowdich and Diaz, and Cowles & Thompson were paid post-petition with funds directly wired from the Cook Islands Trust, and therefore are also recipients of avoidable transfers.

Finally, the Debtor paid his property taxes to the six Dallas-area taxing authorities he has listed as creditors on the Involuntary Petition date, Dallas County, Hospital District, College District, School Equalization, Dallas Ind. School District, and the City of Dallas, with his Citi World MasterCard.  Rhodes first argues that the six Dallas-area taxing authorities should be treated as one creditor for purposes of the fewer twelve creditor requirement in § 303(b).  However, Texas law treats each of these entities as separate taxing units and political subdivisions of the state.  *See Monsanto Co. v. Cornerstones Mun. Utility Dist*., 865 S.W.2d 937, 939-940 (Tex.1993); *Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex.1980).  A political subdivision has jurisdiction over a portion of the State with the power to assess and collect taxes.  *Id*. An appraisal district is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district. TEX. PROP. CODE ANN. § 6.01 (Vernon 2008).  But an appraisal district is not a taxing unit.  *See U.S. v. Herold*, 2001 WL 34104831 (S.D. Tex. June 20, 2001).  A "taxing unit" is defined as:

> "a county . . . a special district or authority . . . or any other political unit of this state . . . that is authorized to impose and is imposing ad valorem taxes on property even if the governing body of another political unit determines the tax rate for the unit or otherwise governs its affairs.

TEX. TAX CODE ANN. § 1.04(12) (Vernon 2008).  Each separate taxing unit has a lien on

the real property for that taxing unit's separate tax. TEX. TAX CODE ANN. § 32.01

(Vernon 2008).  Therefore, the Court finds that each taxing unit should be treated as a

separate creditor for purposes of counting under § 303(b).

      The payments made on the petition date with Mr. Smith's Citi World MasterCard

present a different problem.  Courts treat credit card payments used to pay creditors as

avoidable preferences pursuant to 11 U.S.C. § 547(b).  *See In re Marshall*, 550 F.3d 1251

(10th Cir. 2008); *In re Wells*, 382 B.R. 355 (6th Cir. B.A.P. 2008); *Parks v. Boeing*

*Wichita Credit Union (In re Fox)*, 382 B.R. 800 (Bankr. D. Kan. 2008);  *Mukamal v.*

*Bank of Am. (In re Egidi)*, 386 B.R. 884 (Bankr. S.D. Fla. 2008); *Lewis v. Providian*

*Bancorp (In re Getman)*, 218 B.R. 490 (Bankr. W.D. Mo.1998); *Yoppolo v. Greenwood*

*Trust (In re Spitler)*, 213 B.R. 995 (Bankr. N.D. Ohio 1997).

      "These courts reason that the debtor, even if never in actual possession of the

loaned proceeds, exercises dominion or control over them as evidenced by an ability to

direct their distribution." *In re Marshall*, 550 F.3d at 1256 (citations omitted).  The Fifth

Circuit has used a similar standard to determine when property that is transferred is

"property of the Debtor." *See In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995).

"If the debtor determines the disposition of funds from the third party and designates the

creditor to be paid, the funds are available for payment to creditors in general and the

funds are assets of the estate. In this event, because the debtor controlled the funds and

could have paid them to anyone, the money is treated as having belonged to her for

purposes of preference law whether or not she actually owns it." *Id*. at 1116-17 n. 17.

Section § 547(b) of the Bankruptcy Code states in relevant part:

[T]he trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made on or within 90 days before the date of the filing of the petition;
(5) that enables such creditor to receive more than such creditor would receive if—
     (A) the case were a case under chapter 7 of this title;
     (B) the transfer had not been made; and
     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  The debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.  11 U.S.C. § 547(f).  "A preference is 'a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate.'" *Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004) (quoting *Union Bank v. Wolas*, 502 U.S. 151, 160-61, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991)).  The trustee avoids preferences to discourage creditors from "racing to the courthouse to dismember the debtor during his slide into bankruptcy," and to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." *Id*.  The basic goal of the Bankruptcy Code with respect to preferences is to secure equal distribution of the debtor's assets among his creditors and to prevent favoritism.  *See Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc*., 71 B.R. 1005, 1011 (N.D. Tex. 1987).

The credit card payments made by Mr. Smith to the Dallas-area taxing authorities on the Involuntary Petition date allowed each of these creditors to receive preferential payments pursuant to § 547, and they are therefore excluded from the count of creditors necessary to file an involuntary petition.

At trial, in response to Rhodes' argument that the payment of Mr. Smith's 2008 property taxes resulted in an avoidable transfer that excluded the Dallas-area taxing authorities from the his list of creditors, Mr. Smith argued that his property taxes for 2009 had become due and owing on January 1, 2009, and should therefore be counted. The Court finds this argument unpersuasive.

First, the Dallas-area taxing authorities' claims were neither listed on Mr. Smith's creditor list nor in any of his pretrial briefing. Second, and more importantly, these claims at this point are contingent, and therefore expressly not counted under § 303(b). Section 303(b) states that only "a holder of a claim . . . that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount" is counted in determining the number of creditors necessary to file an involuntary petition.

Under Texas law, it is not the property taxes that become due and owing on January 1st of each year. Rather, it is a lien that attaches on January 1st of each year "to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches." TEX. TAX CODE ANN. § 32.01. While this gives rise to a claim in bankruptcy because as a right to payment, the liquidated amount due for tax payments for a particular year generally are not assessed against the taxpayer until approximately October 1 of that year. *See In re Midland Indus. Service Corp.*, 35 F.3d 164, 166 (5th Cir. 1994). Until that time,

the liability is contingent. *See In re Anchor Glass Container Corp*., 375 B.R. 683, 687 (Bankr. M.D. Fla. 2007) (claim may be contingent because due date for the tax payment had not passed as of the petition date or unliquidated because the taxing authority has not yet set tax rates).   The 2009 property taxes can therefore not be counted.

The removal of the Dallas-area taxing authorities from Mr. Smith's list of qualifying creditors leaves just the four undisputed creditors of Mr. Rhodes, making the one-creditor provision of § 303(b)(2) applicable.  Thus, Rhodes is able to file the involuntary Petition without the need to join two additional creditors.

*Special Circumstances Exception*

Rhodes argues that the Court should apply a "special circumstances" exception to the three creditor requirement.  A line of cases in this district has established a "special circumstances" exception to the three creditor requirement when the alleged debtor has participated in fraudulent transfers and prepetition payments.  *See In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000) (exception to one of the technical requirements of § 303(b) exists when there is fraud, trick, artifice or scam by an alleged debtor); *In re Norris Bros. Lumber Co., Inc*., 133 B.R. 599 (Bankr. N.D. Tex. 1991).  The establishment of the Cook Islands Trust at the time the judgment was obtained by Rhodes in state court, as well as the transfer of the bulk of the alleged debtor's assets to the trust, along with the insertion of the "spendthrift" provision to try to keep the assets out of the hands of creditors, suggests the application of the exception in this case.

However, because the arithmetic from this Court's analysis leads to the conclusion that there are only four holders of qualifying claims against Mr. Smith under § 303(b)(2), this exception does not need to be applied in this case.

### D. The Court's Jurisdiction

Mr. Smith asserts that the Court lacks jurisdiction over a matter brought by a single disputed creditor where an alleged debtor has more then eleven creditors. Thus, Mr. Smith states that this petition should be dismissed under Federal Rule of Civil Procedure 12(B)(1). As stated above, the Court has determined that Mr. Smith has fewer then twelve creditors, which in essence overrules this argument. Further, § 303(b)'s requirements are not jurisdictional. *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035 (11th Cir. 2008); In *re Rubin*, 769 F.2d 611, 614 n.3 (9th Cir.1985); *In re AMC Investors, LLC*, 406 B.R. 478, 482 (Bankr. D. Del. 2009). "The filing of an involuntary petition, even when the alleged debtor challenges whether the petitioning creditor's claim is valid, creates a 'case under title 11' and falls within the subject matter jurisdiction of this Court." *AMC Investors*, 406 B.R. at 482.

### E. Two Party Dispute

Mr. Smith argues that the Court should abstain from taking this case. Bankruptcy Code § 305 provides that section provides, in pertinent part, that:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
(1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305.

"Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) (quoting *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008). "Courts generally

abstain in two-party disputes where relief is available in a non-bankruptcy forum,

[because the] resolution of these disputes has the potential to transform the

bankruptcy process into a collections device, which it is not. *Id*. (internal quotations

omitted).

> Factors to be considered by the Court include:
>
> (1)  the economy and efficiency of administration;
> (2)  whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
> (3)  whether federal proceedings are necessary to reach a just and equitable solution;
> (4)  whether there is an alternative means of achieving an equitable distribution of assets;
> (5)  whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
> (6)  whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
> (7)  the purpose for which bankruptcy jurisdiction has been sought.

*Id*. Weighing these factors in the present case, the Court finds that Mr. Smith has not met

his burden.  There are remedies under the Bankruptcy Code that are not available to

Rhodes under state law, due to Mr. Smith's transfer of the majority of his assets to the

Cook Island Trust, federal proceedings may be necessary to reach a just and equitable

solution, and the bankruptcy court is the most efficient place to administer property of the

estate for creditors.

## IV.    Conclusion

Based on the foregoing, the Court finds that an order for relief should be entered

against Mr. Smith and his counter-claims denied.  Counsel for Rhodes shall submit an

order consistent with this decision within ten days from the date of entry of this opinion.

###End of Memorandum Opinion###