U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 12, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| Milton M. Smith | § Case No. 09-30531-HDH-7 |
| | § |
| Debtor. | § |

**SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On January 30, 2009, Rhodes Properties, Ltd. ("RPL") filed a Chapter 7 Involuntary Petition against Milton M. Smith (the "Debtor" or "Smith"), pursuant to 11 U.S.C. § 303. Smith contested the relief sought by RPL, and moved for dismissal. RPL and Smith then agreed on a discovery and briefing period and the Court held a trial on the Involuntary Petition on July 13th and 23rd with post trial briefs submitted on July 30, 2009. On September 3, 2009, the Court entered its opinion, finding that a order for relief should be entered. Smith appealed. On August 20, 2010, the United States District Court for the Northern District of Texas remanded the case to this Court to consider the impact, if any; a ruling by the state appeals court on a pending appeal

from the underlying state court judgment might have on this Court's prior decision. After consideration of the evidence presented at trial and all other subsequent events in this case, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### A. Facts Leading to Filing of Involuntary Petition

1. By order dated December 10, 2007 (the "Summary Judgment Order"), the State Court granted summary judgment (the "Summary Judgment") in favor of RPL and against Smith on the breach of Guaranty claim in the principal amount of $3,969,576.24 plus prejudgment interest at the rate of 14% for the period April 20, 2007 through the date of judgment. (R. 267).

2. The Summary Judgment Order also disposed of every counterclaim asserted by Smith against RPL (fraud, negligent misrepresentation, and declaratory judgment) by take nothing judgment in favor of RPL. (R. 267-268). Thus, the Summary Judgment Order actually disposed of all claims between RPL and Smith with the sole exception of RPL's claim for attorneys' fees. The parties subsequently negotiated and stipulated to the amount of RPL's reasonable and necessary attorneys' fees. (R. 3594). Based on the parties' written stipulation, the State Court modified the Summary Judgment Order to dispose of RPL's claim for attorneys' fees (R. 269).

3. In January 2008, Smith filed a motion for reconsideration of the Summary Judgment Order which the State Court heard and denied by order dated March 4, 2008. (R. 1718, 2432).

4. On March 27, 2008, the State Court entered an order (the "Severance Order") severing all claims and counterclaims between RPL and Smith into a newly-created case styled *Rhodes Properties, Ltd. v. Smith*, Case No. 08-3866 (the "Severed Case"). (R. 272). The

purpose of the Severance Order was to make the Summary Judgment Order a final, appealable judgment. (*See* R. 2433; the Summary Judgment Order, Attorneys' Fees Amendment, and Severance Order are referred to collectively as the "Judgment," and can be found together at R. 267-75).

5.  Smith repeatedly contested the finality of the Judgment. (*See, e.g.*, R. 130-31, 3758, 3917, 4196, 4304, 4340, 4630, 5161). In two separate post-judgment orders, the State Court specifically expressed its intent and understanding that the Judgment was a final judgment as of the date of the Severance Order:

- By order dated July 23, 2008, the State Court expressly found that "[RPL] has a valid, subsisting, and final judgment against [Smith]" and "[a]s of…the date of the Severance Order, there was a final judgment actually disposing of all parties and claims in this case…", thereby unambiguously confirming its intent that the entry of the Severance Order rendered final judgment. (R. 2482, emphasis supplied).

- In its August 5, 2008 post-judgment injunction against Smith, the State Court found that "RPL has a cause of action against Smith and a probable right to relief because the Court entered a final judgment in this case…in favor of RPL and against Smith on March 27, 2008." (R. 521, emphasis supplied).

6.  Purportedly effective on March 24, 2008 – three days before the State Court signed the Severance Order in order to render final judgment against him – Smith formed the Milton M. Smith Irrevocable Trust, a Cook Islands Trust (the "Cook Islands Trust").[1] (R. 1725-74, 2775-86). Purportedly effective the same day, Smith assigned personal assets that he valued at approximately $6 million to the Cook Islands Trust for no consideration. (R. 1775-77, 2805-11).

---

[1] Smith knew that the Cook Islands are a known debtor haven with favorable laws for debtors seeking to conceal assets from creditors. (R. 2779).

**SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**  Page 3 of 13

7.      Smith is both the settlor and a beneficiary of the Trust. (R. 1736, 1763). As settlor, Smith has the power to appoint and remove "protectors." (R. 1746). The protectors, in turn, have broad powers to appoint and remove the trustee, and to review and approve or veto any action taken by the trustee with respect to the trust assets. (R. 1746-47). Smith's attorneys, Andrew Korn, John Bowdich, and David Goodhart, have each been expressly designated and/or signed documents as protectors of the Cook Islands Trust at various times since its formation. (R. 1763, 2797). Smith's attorneys have also directly received voidable transfers (totaling tens of thousands of dollars) from the Cook Islands Trust since the Petition Date. (*see* R. 694-71, R. 778-81). Smith and his attorney–protectors control the Cook Islands Trust and the transferred assets, which are used as instructed by Smith to fund his personal expenses and legal fees. (*See, e.g.,* R. 2798-2800, 2802, 2818-2823, 2826-29).

8.      On July 22, 2008, the eve of the hearing on RPL's post-judgment turnover application in the State Court, Smith filed a "pauper's affidavit" swearing that his net worth was "negative $2,041,486.24" and that he had only two creditors. (R. 1778). Simultaneously, Smith deposited one dollar ($1.00) in the State Court's registry for the purpose of suspending enforcement of the Judgment pending appeal without posting a bond. (R. 4212).

9.      On January 29, 2009, at the hearing on RPL's objection to Smith's net worth calculation, Smith abruptly withdrew his insolvency affidavit and "dollar bond" and stipulated to the State Court that "as of the time of filing (of the withdrawal notice), the final judgment in this case is no longer superseded." (R. 1816, 5289). Based on that stipulation, the State Court signed an order expressly confirming that the Summary Judgment was no longer stayed:

> [A]s a result of filing of the Notice, the final judgment has been and is hereby no longer superseded. …[T]he clerk shall immediately return the $1,00 cash deposit in lieu of bond to

> Defendant Milton M. Smith. …[A]ll writs and processes for the enforcement and collection of this Court's final judgment may now issue as necessary.

(R. 1816).

### B. Entry of Order for Relief and Memorandum Opinion

10. On January 30, 2009 (the "Petition Date"), RPL filed an involuntary petition (the "Involuntary Petition") against Smith under chapter 7 and section 303 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

11. On May 12, 2009, RPL removed the Severed Case to this court.

12. Smith contested the relief sought through the Involuntary Petition and moved to dismiss. The Involuntary Petition was tried before this court on July 13 and July 23, 2009 (the "Petition Trial"). On September 3, 2009, this Court released its *Memorandum Opinion on Involuntary Petition* [Docket No. 52] (the "Bankruptcy Opinion"), finding among other things that:

- RPL's judgment against Smith "is not the subject of a bona fide dispute as to liability or amount" within the meaning of Bankruptcy Code section 303(h), and that "[t]he majority of decisions analyzing this issue have found that final judgments from state courts that have not been stayed on appeal are not subject to bona fide dispute." Bankruptcy Opinion at 5-7.

- Smith is not generally paying his debts as they come due within the meaning of Bankruptcy Code section 303(h). As explained by the Bankruptcy Court, "[t]he facts as presented at trial show that even though Mr. Smith is paying, including post petition, his small recurring debts as they come due, he is not paying ninety-nine percent of his debts in aggregate amount. Further, that failure to pay is due in great part to his own decision to place the majority of his assets into a trust in the Cook Islands." Bankruptcy Opinion at 7-8.

- Smith has only four qualifying creditors, thus permitting RPL to file an involuntary bankruptcy without the need to join two additional creditors. Bankruptcy Opinion at 9-21.

- Smith's transfers to the Cook Islands Trust support application of the "special circumstances" exception for fraud to the three creditor requirement of §303(b), although the exception need not be applied because Smith has less than 12 qualifying creditors. Bankruptcy Opinion at 21.

### C. The Debtor's Appeal and Subsequent Events

13. Smith appealed this Court's entry of the Order for Relief to the United States District Court for the Northern District of Texas [Case No. 3:09-CV-2186F ] (the "Bankruptcy Appeal"), and requested this Court to stay the bankruptcy case during the pendency of the Bankruptcy Appeal. This request was denied by the Court through its *Order Denying Alleged Debtor's Motion to Stay Pending Appeal* [Docket No. 166] (the "Stay Order"), which included findings that:

- the Debtor had not "shown an absence of substantial harm or the absence of the potential for substantial harm to other parties in the event that the Case is stayed. As this Court has found, the Debtor has previously transferred assets to the Milton M. Smith Irrevocable Trust, a self-settled Cook Islands Trust…The assets transferred to the Trust belong to the Debtor's bankruptcy estate. Allowing the Case to be stayed pending the resolution of the Appeal would put those assets at risk." Stay Order at p. 2.

- the Debtor had not "shown an absence of harm to the public interest if the Court were to stay this Case. A stay of this Case would not be consistent with public policy because the Debtor has transferred assets to the Trust – an offshore, self-settled trust over which the Debtor now claims he has no control. This transfer occurred following a ruling against the Debtor in State Court. Allowing that status to be maintained during the course of the Appeal would not be consistent with the public interest or the interest of the Debtor's bankruptcy estate." Stay Order at p. 2.

14. On July 27, 2010, the Fifth District Court of Appeals dismissed Smith's appeal of the Summary Judgment (the "State Court Opinion") because, in its view, the state court judgment was not final because it did not specify a post-judgment interest rate. *See Smith v. Rhodes Properties, Ltd.*, No. 05-08-00856-CV, 2010 Tex. App. LEXIS 5907 (Tex. Ct. App.

Dallas, July 27, 2010). The state appeals court did not reverse or modify the state court's orders or findings in any respect. It simply dismissed Smith's appeal.

15. On August 12, 2010, RPL filed its Motion for Entry of Order Regarding Post judgment Interest and Costs [Docket No. 17 in Case No. 09-3126], asking this Court to enter an order awarding RPL post judgment interest at the federal statutory rate, and ordering each party to bear its own court costs, to eliminate any question as to the finality of the Judgment against Smith.

16. On August 20, 2010, the District Court hearing the Bankruptcy Appeal remanded the case to this Court "for consideration of the impact, if any, of the [State Court Opinion] on the Bankruptcy Court's opinions and orders." *See* Order Remanding Case to Bankruptcy Court for Consideration in the First Instance of Newly Presented Question [Case No. 09-cv-2186-F].

## CONCLUSIONS OF LAW

17. In its Bankruptcy Opinion, this Court found and concluded, based on voluminous evidence admitted at the Petition Trial, that it had jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference in this district, that RPL's claim against Smith was not the subject of a bona fide dispute as to liability or amount, and that the entry of an Order for Relief was proper pursuant to Section 303 of the Bankruptcy Code. Those remain the findings and conclusions of this Court. The dismissal of Smith's state court appeal - an action taken by the state appellate court more than one year after the Petition Date and 10 months after the entry of the Order for Relief - does not divest this Court's jurisdiction or change the result of the Petition Trial.

18. A creditor's eligibility to be a petitioning creditor is to be determined at the time of the case filing. *See, e.g., In re Drexler*, 56 B.R. 960 (Bankr. S.D.N.Y. 1986) (holding that money judgment against debtor appeared, at time of filing of involuntary bankruptcy petition, to be an unstayed final judgment from which debtor had taken an appeal; as such, there was no bona fide dispute to preclude involuntary bankruptcy relief notwithstanding subsequent determination by appellate court that money judgment was not final); *see also In re Cohn-Phillips, Ltd.,* 193 B.R. 757, 764 (Bankr. E.D. Va. 1996) ("The Petitioning Creditors' arguments are misplaced. The Code contemplates that the number of creditors is to be determined as of the date of the petition filing...The Petitioning Creditors' evidence may establish that the debtor had many creditors at the time of Arbitration Summary and at the time of the June letters. However, the evidence did not establish anything more."); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir. 1988) ("Post-petition payment of a debt does not affect whether the debt is subject to a bona fide dispute...A bankruptcy court determines the number of petitioning creditors filing an involuntary bankruptcy petition on the date the bankruptcy is filed.").

19. The *Drexler* opinion relied on by this court in its Bankruptcy Opinion presented a similar situation. *In re Drexler,* 56 B.R. 960 (Bankr. S.D.N.Y. 1986). The *Drexler* court concluded that an unstayed judgment which – like the Judgment in this case – appeared to be final as of the Petition Date established that there was no bona fide dispute as to the creditor's claim:

> The Money Judgment appeared, at the time of the filing of the involuntary petition, to be a partial final judgment, which is permitted by Fed.R.Civ.P. 54(b). It had never been stayed by the posting of a bond or otherwise, an appeal was pending from it, and an execution had been returned unsatisfied. Unfortunately, an additional complexity was created when on November 6, 1984, the Second Circuit held that the Money Judgment was improperly

>certified and was not final. In determining matters respecting the claims of the petitioners the court generally is to look at matters as they stood on the date the petition was filed. *See, e.g., In re Johnston Hawks, Ltd.,* 49 B.R. 823, 832 (Bankr. D. Ha. 1985); 2 Collier on Bankruptcy (15th Ed.1985), ¶ 303.08[1]. On that date, the Money Judgment appeared to be an unstayed final judgment from which the debtor had taken an appeal. Nor does this court believe that treating the Money Judgment as final for the purpose of resolving one of the legal issues presented by this involuntary petition is to elevate form over substance.

*Drexler* at 968.

20. The situation here is akin to that in *Drexler*. As of the Petition Date, RPL appeared to hold a final judgment against Smith. That judgment was not stayed by the posting of a bond or otherwise. The majority of decisions analyzing this issue have found that final judgments from state courts that have not been stayed on appeal are not subject to bona fide dispute. *In re AMC Investors, LLC*, 406 B.R. 478, 484 (Bankr. D. Del. 2009) (citing *In re Norris*, 1997 WL 256808, at *5 (5th Cir. 1997) (per curiam); *In re Drexler*, 56 B.R. at 967. Since RPL held what appeared on the Petition Date to be an unstayed final judgment against Smith, RPL's claim is not the subject of a bona fide dispute. Further, there is no requirement that the judgment be final for a bankruptcy court to determine that the creditor's claim is not subject to a bona fide dispute, all that is required is the establishment of a right to payment. *See In re AMC Investors, LLC*, 406 B.R. 478, 485-486 (Bankr. D. Del .2009). *Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004).(definition of "claim" under the Bankruptcy Code includes a "right to payment, whether or not such right is reduced to judgment." Therefore, the definition of claim "permits some creditors who have not reduced their claims to judgment to file involuntary petitions.").

21. Even if the Court were to review the claim as of today, there would be no objective basis for determining that RPL's claim against Smith is the subject of a bona fide dispute. As noted by the Fifth Circuit in *Sims*, there is a shifting burden when determining if a creditor's claim is subject to a bona fide dispute:

> The Petitioning Creditor must establish a prima facie case and that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The Court's objective is to ascertain whether a dispute that is bona fide exists; the Court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues...Finally, because the determination as to whether a dispute is bona fide will often depend...upon an assessment of witnesses' credibility and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous."

*In re Sims*, 994 F.2d 210, 221 (5th Cir. 1993) (internal citations omitted).

22. Courts have employed different tests to determine whether or not there is an objective basis for determining that a bona fide dispute exists. Some courts in this Circuit have adopted a "summary judgment" type standard, reasoning that "if the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute." *See, e.g., In re Cates*, 62 B.R. 179, 181 (Bankr. S.D. Tex. 1986) (quoting *In re Stroop*, 51 B.R. 210, 212 (D. Colo. 1985)). Courts in other circuits have held that the "summary judgment" type standard creates too high of a hurdle for a would-be petitioning creditor. *See, e.g., In re B.D. Int'l Discount Corp.*, 701 F.2d 1071,

1077 (2nd Cir. 1983) ("In order to qualify a claim as a basis of seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment…It is sufficient to establish…that there are good grounds for the claim and that no defenses have been asserted in substantiable form."); *see also MAG Bus. Servs. Bentley Racing Prods. v. Whiteside (In re Whiteside)*, 238 B.R. 468, 469 (Bankr. W.D. Mo. 1999) ("A bona fide dispute exists if there are 'substantial' factual and legal questions raised by the debtor bearing upon the debtor's liability…"); *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs., Inc.,* 865 F.2d 65, 66-67 (3rd Cir. 1989), *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991).

23. In reviewing an alleged debtor's defenses to the entry of an order for relief, this Court is required to give attention and deference to the findings of other forums. *In re Elsa Designs*, 155 BR 859, 869 (Bankr. S.D.N.Y. 1993) ("Attention and deference, when appropriate, must be given to any determinations made by the other forum on issues raised by the debtor in opposition to the entry of the order for relief."). After reviewing the factual and legal merits of all claims and counterclaims between RPL and Smith, the State Court granted summary judgment adjudicating all such claims in favor of RPL and against Smith. The subsequent dismissal of Smith's state court appeal did not reverse or modify the Judgment in any respect. Even if the Judgment was not technically final on the basis of the post-judgment interest rate issue, "[t]he pre-involuntary entry of a judgment of liability, while not creating a final judgment, is a giant step towards entry of a final judgment and a clear signpost of the debtor's exposure to the claimant which this court is not free to ignore." *In re Ross*, 63 BR 951, 967 (Bankr. S.D.N.Y. 1986). Smith's defenses to the claims of RPL were already measured against and did not survive the more strict "summary judgment" test for determining the objective viability of a possible bona fide dispute.

24. As noted above, RPL removed the Severed Case to this court on May 12, 2009. After removal, the enforcement and efficacy of an existing state court order is governed by federal law. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 437 (1974); *Walker v. F.D.I.C.*, 970 F.2d 114, 121 (5th Cir.1992) (federal rather than state procedural law applies since federal law controls the course of proceedings from the point of removal); *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir.1988) (a prior state court order is federalized when the action is removed to federal court). Post judgment interest is awarded automatically by statute to civil litigants who recover money judgments in federal court, and the statute itself sets the applicable rate. *See* 28 U.S.C. § 1961(a) (allowing interest at the rate of the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment"); *Paternostro v. Crescent City Connection Police*, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (automatic award of interest under § 1961(a)). Pursuant to Rules 54, 56 and/or 58 of the Federal Rules of Civil Procedure, this Court has authority to render a final award of interest and costs to the extent necessary to address the Debtor's technical objections to finality, and has done so by entering its *Order Regarding Post judgment Interest and Court Costs and Final Judgment*. *See* Fed. R. Bankr. P. 7054, 7056, 7058.

25. The calculation of post judgment interest is, according to the state appeals court, a calculation based on the contract at issue or statute. Because the determination of post judgment interest is not subject to a bona fide dispute, that omission from the state court judgment does not, in this Court's opinion, render the claim of RPL subject to a bona fide dispute.

26. Finally, as discussed in the Bankruptcy Opinion, a line of cases in this district has established a "special circumstances" exception to the requirements of section 303(b) when the alleged debtor has participated in fraudulent transfers and prepetition payments. *See In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000) (exception to one of the technical requirements of § 303(b) exists when there is fraud, trick, artifice or scam by an alleged debtor); *In re Norris Bros. Lumber Co., Inc.*, 133 B.R. 599 (Bankr. N.D. Tex. 1991). The establishment of the Cook Islands Trust at the time the Summary Judgment was obtained by RPL, the transfer of the bulk of Smith's assets to the Cook Islands Trust, and the insertion of the "spendthrift" provision to try to keep the assets out of the hands of creditors suggested the application of the exception in this case at the time of the Petition Trial. Subsequent events – evidenced by the court's findings in the Stay Order, the Turnover Order, and the Crime-Fraud Order – make it clear that the "special circumstances" exception should apply in this case.

27. Therefore, this Court determines that the RPKL claim is not subject to a bona fide dispute. Based on these findings and the entire record before the Court, it is clear that the entry of the Order for Relief was proper.

###End of Supplemental Findings of Fact and Conclusions of Law###